```
                  UNITED STATES DISTRICT COURT
                   DISTRICT OF NEW HAMPSHIRE
```

United Student Aid Funds, Inc.

    v.                                    Civil No. 07-214-JL
                                          Opinion No. 2008 DNH 108

Prodanis, Inc., d/b/a/
Seasons Tickets Sports Pub


**O R D E R**

Plaintiff United Student Aid Funds, a loan guaranty agency under 20 U.S.C. § 1095a, sued Prodanis, Inc. for failure to comply with a wage withholding order requiring Prodanis to garnish the wages of its employee--whose federally guaranteed student loan had been purchased by USA Funds after she had defaulted on her monthly payments. By agreement of the parties, the court entered judgment in favor of USA Funds on March 5, 2008, and scheduled a hearing on the issue of damages, costs, and attorney's fees. After considering the arguments of the parties, both in their pleadings and at the hearing conducted on May 7, 2008, the court orders Prodanis to make payment to USA Funds as set forth below.

I.    **BACKGROUND**

USA Funds guaranteed the student loan of an employee of Prodanis who had defaulted on her monthly payments. After

repeated attempts to collect the loan payments directly from her, USA Funds issued a wage withholding order to her employer, Prodanis, requiring it to garnish 15% of her wages.  Prodanis failed to comply with, or respond to, the order.  After several additional attempts to get Prodanis to comply, including issuing a second wage withholding order, Fox Rothschild, LLP ("national counsel") issued a demand letter to Prodanis requesting compliance with the withholding order.  On June 22, 2007, after several months without a response to its letter, USA Funds hired local counsel in New Hampshire--the Law Office of Rodney K. Stark, P.A ("local counsel")--to file suit against Prodanis.

On July 16, 2007, USA Funds filed a complaint against Prodanis in this court, which was later amended to correct a number of errors in the original.[1]  As months passed, settlement negotiations ensued and continued.  On March 5, 2008, at the preliminary pretrial conference in this court's chambers, Prodanis stipulated to its liability for failing to comply with the order and to judgment in favor of USA Funds.  The specific amount of the judgment was to be determined at a damages hearing.

---

[1] The original complaint (Doc. 1) alleged that Prodanis failed to garnish 10% of its employee's wages over the relevant period of time, and requested damages commensurate with that percentage.  The amended complaint (Doc. 8) increased that figure to 15%.

**II.  ANALYSIS**

USA Funds now seeks $644.89 in ungarnished wages, reimbursement for $9,272.68 in attorney's fees and costs associated with this litigation, and $963.08 in interest.[2] Prodanis, while conceding the amount of ungarnished wages, argues that the remainder of USA Funds's requested damages are either unwarranted or excessive.

In 1991, Congress amended the Higher Education Act of 1965 to authorize guaranty agencies to order the garnishment of the wages of student borrowers who have defaulted on their student loans.  See 20 U.S.C. § 1095(a).  Once an employer has been served with a wage withholding order by a guaranty agency, it is obligated to withhold a percentage of the wages due to the employee referenced in the order.  See 34 CFR § 682.410(b)(9). In the event an employer fails to comply with the order, the statute specifically sets forth the remedies available to a guaranty agency:

> the employer [of the student borrower in default on his or her loan] shall pay to the . . . guaranty agency as directed in the withholding order issued in this action, and shall be liable for, and the . . . guaranty

---

[2] USA Funds asks the court for leave to "supplement its claim at the time of the court's decision to reflect additional costs and fees incurred."  (Pl.'s Mem. Supp. Mot. Award Damages, Costs, and Att'ys Fees  § II, D).

>agency . . . may sue the employer . . . to recover, any amount that such employer fails to withhold from wages due to an employee following receipt of such employer of notice of the withholding order, <u>plus attorney's fees, costs, and in the court's discretion, punitive damages</u>.

20 U.S.C. § 1095a(a)(6) (emphasis added). Employers that choose to ignore a withholding order are thus liable for not only the ungarnished wages, but also the guaranty agency's attorney's fees and costs in pursuing these wages. Here, with respect to the amount of ungarnished wages, the parties agree that Prodanis failed to withhold $644.89 in wages from its employee--or 15% of $4,299.85. (Doc. 24 §§ 1-2). Accordingly, the court awards $644.89 to USA Funds in compensatory damages.

### A. <u>Attorney's fees and costs</u>

As explained <u>supra</u>, § 1095a(a)(6) of the amended Higher Education Act requires courts to award attorney's fees and costs to a guaranty agency forced to bring suit to enforce a garnishment order. The guaranty agency, however, is only entitled to recover those expenses reasonably incurred by its attorneys in connection with work that was both useful and necessary to its claim in this court. <u>See</u> <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 n.7 (1983) (reasonableness standards "are generally applicable in all cases in which Congress has

authorized an award of fees to a 'prevailing party.'"); see also Educ. Credit Mgmt. Corp. v. Cherish Prods., Inc., 312 F. Supp. 2d 1183, 1186 (D. Minn. 2004); Educ. Credit Mgmt. Corp. v. Cherish Prods., Inc., 247 F. Supp. 2d 1132, 1135 (D. Minn. 2003); Educ. Credit Mgmt. Corp. v. Wilson, No. 1:05-cv-41, 2006 WL 4608614, at *8-*9 (E.D. Tenn. Oct. 3, 2006).  Despite USA Funds' argument to the contrary at the damages hearing, the absence of the word "reasonable" in § 1095a(a)(6) does not eliminate this court's discretion to assess the reasonableness of fee and cost claims. Only those attorney's fees and costs which the court deems reasonable, as opposed to all fees requested by counsel, are recoverable.  See Wilson, 2006 WL 4608614, at *9 (the court is not "a mere 'rubber stamp' without any authority and discretion to review claims for attorney's fees").  Accordingly, the court awards to USA Funds what it requested in both its original and amended complaints:  "Reasonable fees and costs of court."  (Doc. 1 at 7; Doc. 10 at 7).

The calculation of reasonable attorney's fees is made by multiplying the number of hours reasonably expended by a reasonable hourly rate of pay.  See Hensley, 461 U.S. at 433. This is commonly referred to as the "lodestar" calculation. Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 950 (1st Cir. 1984).

The First Circuit briefly but succinctly described the lodestar analysis as follows:

> To determine the numbers of hours reasonably spent, one must first determine the number of hours actually spent and then subtract from that figure hours which were duplicative, unproductive, excessive, or otherwise unnecessary.  In calculating a reasonable hourly rate, one must consider such factors as the type of work performed, who performed it, the expertise that it required, and when it was undertaken.

Id. at 950-51 (internal quotations and citations omitted).  In calculating the lodestar figure, the court may exclude "time spent on certain unsuccessful claims, eliminate excessive or unproductive hours and assign more realistic rates to time spent," Vieques Conservation and Historical Trust, Inc. v. Martinez, 313 F. Supp. 2d 40, 46 (1st Cir. 2004), and is "entitled to rely upon its own knowledge of attorney's fees in its surrounding areas in arriving at a reasonable hourly rate." Andrade v. Jamestown Housing Authority, 82 F.3d 1179, 1190 (1st Cir. 1996).  Likewise, when determining the reasonableness of requested costs associated with the litigation, "the court must apply a similar test of reasonableness and necessity."  Larkin, 749 F.2d at 951.

In arriving at the number of hours reasonably spent by USA Funds's attorneys in litigating this case, the court excludes:

(1) all work performed by national and local counsel in amending the original complaint to remove its errors, see Copeland v. Marshall, 641 F.2d 880, 891 (D.C. Cir. 1980) ("[h]ours that are not properly billed to one's client also are not properly billed to one's adversary"), and (2) all work performed by national counsel after June 22, 2007, the date USA Funds retained local counsel.  The court excludes the fees incurred by national counsel after June 22, 2007, as duplicative and unnecessary in light of the able and effective representation of local counsel available to USA Funds from that date forward.

In its lodestar calculation, the court adopts the hourly rate of Attorney Sherry Hieber ($185/hour)--the primary attorney for local counsel--as a reasonable hourly rate for both local and national counsel for the type of work and requisite level of expertise involved.  See Ackerly Communications v. Somerville, 901 F.2d 170, 172 (1st Cir. 1990) (reasonable rate for out-of-town counsel "depends on prevailing rates in the community for comparably qualified attorneys").  The court also adopts the paralegal hourly rate requested by USA Funds ($85/hour). Applying those rates, and excluding the costs and fees mentioned above, the court awards attorney's fees and costs, totaling $6,294.01, to USA Funds as follows:

|  | Fees | Costs | Total |
|---|---|---|---|
| • National counsel: | $370.00 | $18.61[3] | $388.61 |
| • Local counsel: | $5788.00[4] | $117.40 | $5905.40 |

**B.  Interest**

While 20 U.S.C. § 1095a authorizes damages, attorney's fees, and costs, the statute makes no mention of interest.  USA Funds argues that it is entitled to interest at the rate of $1.19 per day, totaling $963.08 through March 24, 2008.  USA Funds arrived at this daily rate by multiplying the borrower's total student loan debt--rather than the amount of ungarnished wages--by "the annual rate of interest," and then dividing that figure by 365.25.  (Pl.'s Reply to Def.'s Obj. to Mot. Damages, Att'ys Fees, Costs, and Interest ¶ 6).  USA Funds cites no authority in support of this proposed interest rate.  Rather, it unconvincingly argues that it is "in accordance with industry standards" and "routinely awarded in these types of cases."  Id.  The court finds this argument--especially the idea that interest

---

[3] In its award to national counsel, the  court excludes $2,121.00 from USA Fund's request for attorney's fees and $361.92 from its requested costs for work performed after June 22, 2007.

[4] In its award to local counsel, the court excludes $495.75 of fees requested by USA Funds which the court can readily attribute to the amendment of its complaint.

accrues not on the sum of ungarnished wages, but rather on the entire debt, for which the employer bears no responsibility--unreasonable, without statutory or case law support, and especially unpersuasive in a case where the statutorily-required award of costs and fees is nearly ten times the amount of the principal recovery, even after a substantial reduction by the court.[5]

### 1.  Pre-judgment interest

The federal statute applicable to this case, 20 U.S.C. § 1095a, provides no standards governing the allowance of pre-judgment interest. Under First Circuit precedent, however, where a federal statute is silent on the issue of pre-judgment interest, "[t]he court has proper discretion under its equitable powers to [grant prejudgment interest] as long as the interest deals with tangible losses." Colon Velez v. P.R. Marine Mgmt., Inc., 957 F.2d 933, 941 (1st Cir. 1992); see also U.S. ex rel. Metric Elec., Inc. v. Enviroserve, Inc., 301 F. Supp. 2d 56, 75 (D. Mass. 2003) (court may order pre-judgment "interest on damages unless they were not ascertainable with sufficient

---

[5] See Riverside v. Rivera, 477 U.S. 561, 575-76 (1986) (explaining situation where fee awards that substantially exceed recoveries may be necessary to ensure that plaintiffs are able to secure legal representation).

certainty before trial"). When establishing a pre-judgment interest rate under its equitable powers, "the court may look to state law in setting the pre-judgment interest rate." Velez, 957 F.2d at 941. Under New Hampshire law, the pre-judgment rates of interest applicable to this case (6.8% for 2007, and 6.0% for 2008), N.H. Rev. Stat. Ann. § 336:1, accrue on damages from the date suit is filed until judgment is entered. Id. § 524:1-b.

The court, in the exercise of its discretion, awards pre-judgment interest on USA Funds' $644.89 in ungarnished wages to "compensate [it] for loss of use of the money it should have had" if Prodanis had complied with the garnishment order. E. Mtn. Platform Tennis, Inc. v. Sherwin-Williams Co., 40 F.3d 492, 504 (1st Cir. 1994); see also West Virginia v. United States, 479 U.S. 305, 310 n.2 (1987) ("Prejudgment interest serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress."). Utilizing the interest rates authorized by New Hampshire law, and allowing pre-judgment interest to accrue from the date the complaint was filed (July 16, 2007) through the date of the judgment (March 5, 2008), the court awards $27.16 in pre-judgment interest.

### 2. <u>Post-judgment interest</u>

28 U.S.C. § 1961(a), which governs the award of post-judgment interest in federal court, provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." Interest "shall be calculated from the date of the entry of the judgment," § 1961(a), and "computed daily until the date of payment," § 1961(b). The First Circuit recently defined the phrase "entry of judgment" to refer to the date liability is established--here, March 5, 2008, the date of the preliminary pretrial conference at which Prodanis stipulated to, and the court entered, judgment--rather than the date the "money judgment" is quantified--the date of this order. See <u>Radford Trust v. First Unum Life Ins. Co. of Am.</u>, 491 F.3d 21, 24 (1st Cir. 2007). Under the statute, the interest rate applicable to damages post-judgment is determined by the weekly average one-year constant maturity Treasury yield for the calendar week preceding the date of judgment.[6] 28 U.S.C. § 1961(a).

The court accordingly awards post-judgment interest to USA Funds to be calculated daily at the applicable rate of interest from March 5, 2008, until the date payment is made.

---

[6] The current interest rates applicable under 28 U.S.C. § 1961 are published weekly by the Federal Reserve and can be located at http://www.federalreserve.gov/releases/h15/current.

11

**III. CONCLUSION**

In accordance with the foregoing discussion, USA Funds is awarded attorney's fees of $6,158.00, costs of $136.01, damages of $644.89, prejudgment interest of $27.16, and post-judgment interest to be calculated as set forth in the order.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  May 23, 2008

cc:  Cheryl M. Hieber, Esq.
     Roy W. Tilsley, Jr., Esq.